# UNITED STATES DISTRICT COURT

for the

## District of Maine

Case No. _____

| | |
|---|---|
| SARA HALSEY, an individual<br>with a primary place of residence in the<br>City of Augusta, County of Kennebec, State of Maine,<br><br>and<br><br>SUSAN KIRALIS-VERNON, an individual<br>with a primary place of residence in the<br>Town of Vassalboro, County of Kennebec, State of Maine,<br>      Plaintiffs<br>vs.<br><br>FEDCAP REHABILITATION SERVICES, INC.<br>a Nonprofit Corporation incorporated in the<br>State of New York and doing business in the<br>City of Augusta, County of Kennebec, State of Maine,<br>      Defendant | **COMPLAINT**<br>FOR A CIVIL CASE<br><br>JURY TRIAL DEMANDED |

   NOW COME Plaintiffs Sara Halsey and Susan Kiralis-Vernon (collectively, "Plaintiffs"), by and through Counsel, and hereby complain against the Defendant Fedcap Rehabilitation Services, Inc. ("Fedcap") as follows:

**PRELIMINARY STATEMENT**

   In 2016, the State of Maine contracted Fedcap to administer ASPIRE-TANF, a federally funded social safety net program intended to help low-income parents in Maine obtain employment to sustain their families. Fedcap administers the program under the name "Breaking the Cycle," but has in fact perpetuated the cycle of poverty in Maine by failing to administer the program's non-discretionary functions with reasonable care and loyalty. Sara Halsey and Susan Kiralis-Vernon are two women who enrolled in the ASPIRE-TANF program with career goals and families to support. Fedcap thwarted their access to the program's benefits in violation of Plaintiffs' rights under state law. As a result, Plaintiffs suffered economic damages and severe emotional distress for which they are entitled to compensatory damages in tort and contract, and punitive damages which are necessary to discourage Fedcap's malicious, exploitive behavior in the future.

## JURISDICTION AND VENUE

1. Plaintiffs bring this Complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship; the defendant Fedcap is the subject of a foreign state; and the amount in controversy exceeds $75,000.

2. Venue is proper in this district because the activity and damages which form the basis of Plaintiffs' Complaint occurred in the County of Kennebec, State of Maine, which venue is within the jurisdiction of this Court.

## PARTIES

3. Plaintiff Sara Halsey is an individual with a primary residence in the City of Augusta, County of Kennebec, State of Maine.

4. Plaintiff Susan Kiralis-Vernon is an individual with a primary residence in the Town of Vassalboro, County of Kennebec, State of Maine.

5. Defendant Fedcap Rehabilitation Services, Inc. ("Fedcap") is a Nonprofit Corporation incorporated in the State of New York and doing business in the City of Augusta, County of Kennebec, State of Maine, at all times relevant to this Complaint.

## FACTS

6. The Maine Department of Health and Human Services (the "Department") administers the Temporary Assistance for Needy Families program ("TANF") in accordance with the United States Social Security Act and Maine law.

7. TANF provides cash assistance to extremely low-income families while they work towards becoming self-sufficient.

8. In 2016, and at all times relevant to this Complaint, Plaintiffs were enrolled in TANF.

9. As TANF participants, Plaintiffs were required to participate in the Additional Support for People in Retraining and Employment ("ASPIRE") program, which was also administered by the Department.[1]

10. "The purpose of [the ASPIRE] program is to provide services and support to recipients of [TANF] and to reduce dependence on public assistance to the extent that adequate

---

[1] *See* 22 M.R.S.A. §§ 3781-A, 3785.

funding is available for that purpose. The principal goal is to focus on helping people obtain and retain employment that sustains their families."[2]

11. The ASPIRE program is intended to provide "training, education, and support services to its participants with the expectation that those participants will be placed in employment which will not result in a net loss of cash income, and with the greater expectation that most participants will obtain employment which will lead to benefits, wages and career ladders that will enable them to support their families."[3]

12. Participation in the ASPIRE program is mandatory for TANF recipients and failure to participate may result in "sanction," or the reduction or termination of TANF benefits.[4]

13. In 2016, and at all times relevant to this Complaint, the Department contracted with Fedcap to deliver employment, training, and other services for ASPIRE program participants (the "Department Contract").

14. Under the Department Contract, the Department validly conferred authorization and responsibility to Fedcap for delivering non-discretionary, ministerial services to participants in the ASPIRE program (the "Services").[5]

15. In its capacity as the Department's independent contractor, Fedcap assumed responsibility for delivering the Services to Plaintiffs which Plaintiffs were legally entitled to receive as ASPIRE program participants.

16. In its capacity as the Department's independent contractor, Fedcap was the gatekeeper for Plaintiffs' access to the Services and had authority to make final determinations as to the content of Plaintiffs' Family Contract Amendments; to request all support service benefits from the Department on Plaintiffs' behalf; and to request a sanction from the Department to reduce or terminate Plaintiffs' TANF benefits.

17. Fedcap was required to deliver the Services to Plaintiffs in accordance with reasonably precise specifications established by state law, agency rules, and contract provisions.

18. Among those reasonably precise specifications, Fedcap was required to assess program participants' education and training needs for attaining sustainable employment and to provide necessary and available support services.

---

[2] 22 M.R.S.A. § 3781-A.
[3] 10-144 C.M.R. ch 607, Section II(A)(6) (2021) ("ASPIRE-TANF Program Rules").
[4] 22 M.R.S.A. § 3763(1-A).
[5] 22 M.R.S.A. § 3782-A(2).

19. Among those reasonably precise specifications, Fedcap was required to inform program participants about their education, training, study, and work requirements under the ASPIRE program.

20. Among those reasonably precise specifications, Fedcap was required to inform program participants about all available education, employment, and training opportunities and support services available under the ASPIRE program.

21. Among those reasonably precise specifications, Fedcap was required to provide program participants with an opportunity to apply for any education, employment, and training opportunity and/or support services available under the ASPIRE program.

22. Among those reasonably precise specifications, Fedcap was required to inform all program participants of the Parents as Scholars program, offer them the opportunity to apply for Parents as Scholars when there were fewer than 2,000 people enrolled in Parents as Scholars, and coordinate and guide them through Parents as Scholars, which provides financial aid for students with dependent children.

23. Among those reasonably precise specifications, Fedcap was required to assess and document program participants' barriers to participation, including, but not limited to participants' physical and mental health profile, alcohol and/or drug use, familial relationships, transportation needs, financial situation, and other barriers to employment.

24. Among those reasonably precise specifications, Fedcap was required to offer program participants with barriers to participation an opportunity for comprehensive assessment which could result in referral for alternative services, supports and income benefits, and referral to a qualified professional to identify the strengths and needs of and barriers faced by that participant.

25. Among those reasonably precise specifications, Fedcap was required to offer reasonable alternative participation requirements to program participants with disabilities or other good cause, and to ensure that program participants with disabilities were given the right to request and receive a reasonable accommodation in order to receive substantially the same program benefits as persons without disabilities.

26. Among those reasonably precise specifications, Fedcap was required to ensure that program participants were not discriminated against on the basis of race, sex, or disabling condition.

27. Among those reasonably precise specifications, Fedcap was required to coordinate and authorize support services for program participants for child-care, transportation, and other support services directly related to education, training, job search, work component activities and

employment services, including support services for tuition, mandatory school fees, and books and supplies for participants in post-secondary education programs.

28. Among those reasonably precise specifications, Fedcap was required to use commercially reasonable efforts to secure support services from the Department; notify the Department daily about support services to be issued on behalf of participants; request support services in a timely manner; and assist participants with collection of any required documentation needed for the Department to issue the support either to the Participant or the vendor.

29. Fedcap failed to deliver the Services in accordance with explicit instructions and/or reasonably precise specifications. It was reasonably foreseeable to Fedcap, based on the circumstances and facts known to Fedcap at the time, that Plaintiffs would suffer damages arising from loss of earnings, loss of earning capacity, loss of earning opportunity, severe emotional distress, and lost enjoyment of life, as a proximate result of Fedcap's failure to deliver the Services.

30. As a direct and proximate result of Fedcap's failure to deliver the Services in accordance with explicit instructions and/or reasonably precise specifications, Plaintiffs sustained damages arising from loss of earnings, loss of earning capacity, loss of opportunity, severe emotional distress, and lost enjoyment of life, all of which elements of damage are of a continuing nature since the damages are permanent in their effects.

### Sara Halsey

31. Sara Halsey ("Sara") began participating in the ASPIRE program with Fedcap in 2016.

32. When she began participating in the ASPIRE program, Sara was in substance use recovery and had a newborn daughter.

33. In 2017, Sara's medical providers recommended that Sara delay seeking employment through ASPIRE because of health barriers related to her disabilities, including the need for stability in her recovery.

34. Nevertheless, Fedcap notified Sara that she must find a childcare provider for her daughter and come to the Fedcap office daily to apply for jobs. Fedcap threatened a sanction to Sara's TANF benefits if she failed to do so within one week.

35. The sudden deadline for putting her one-year-old daughter in childcare or losing their only source of income disrupted Sara's recovery and caused her severe emotional distress.

36. At that time, Fedcap did not inform Sara that she could participate in the ASPIRE program by pursuing education.

37. In 2019, Sara enrolled in a full-time graduate certificate program ("certificate program") at the University of Maine at Augusta with the goal of obtaining her bachelor's degree to pursue a career in alcohol and drug counseling for people in substance use recovery.

38. When Sara informed Fedcap that she had enrolled in a certificate program, Fedcap did not inform Sara about the Parents as Scholars program or give her an opportunity to apply, nor was Sara informed about or given the opportunity to apply for all other support services for which she was eligible while pursuing education.

39. When Sara was eventually informed about support services, Fedcap provided her with inaccurate information about the requirements to obtain support services. Fedcap required Sara to work a part-time job in addition to a full-time course load to obtain support services for childcare while she was in school, although this was not required under the program. Sara worked the night shift at Hannaford and went to school full-time during the day which prevented her from getting adequate sleep, separated her from her daughter for long periods, and caused Sara severe mental distress.

40. When Sara received support services for childcare, Fedcap failed to timely submit requests to the Department so that Sara's childcare costs could be promptly paid.

41. The continuous threat of losing childcare for late or non-payment caused severe emotional distress to Sara, who feared for her daughter's wellbeing and her own ability to continue her education without reliable childcare.

42. At the time of this filing, Sara still has not completed her bachelor's degree as a direct and proximate result of Fedcap's failure to deliver the Services for which Sara was eligible under the ASPIRE program.

### Susan Kiralis-Vernon

43. Susan Kiralis-Vernon ("Susan") began participating in the ASPIRE program with Fedcap in 2016.

44. When Susan began participating in the ASPIRE program, she had a one-year-old daughter with special health needs and an eight-year-old son.

45. In 2016, Susan enrolled in a bachelor's degree program at the University of Maine at Augusta with the goal of obtaining her bachelor's degree to pursue a career in prisoner rehabilitation services.

46. When Susan informed Fedcap that she had enrolled in a bachelor's degree program, Susan was not informed about the Parents as Scholars program or given the opportunity to apply,

nor was Susan informed about or given the opportunity to apply for all support services for which she was eligible while pursuing education.

47. Without support services, Susan struggled to afford the books and supplies she needed for college courses and often could not access the materials she needed from home.

48. When Susan received support services for childcare, Fedcap failed to timely submit requests to the Department so that Susan's childcare costs could be promptly paid.

49. The continuous threat of losing childcare for late or non-payment caused severe emotional distress to Susan, who feared for her daughter's wellbeing and her own ability to continue her education without reliable childcare.

50. Fedcap did not inform Susan about the Parents as Scholars program until one year after she started her bachelor's degree program.

51. Susan completed the Parents as Scholars application, but Fedcap did not submit her application to the Department.

52. In 2019, a Fedcap employee yelled at Susan for allegedly missing an appointment. This verbal altercation took place in the waiting room of a Fedcap office in front of other Fedcap staff and ASPIRE participants. The Fedcap employee requested "security" and threatened to call the police. When this occurred, Susan's children were in the bathroom at the Fedcap office, and the Fedcap employee attempted to make Susan leave without her children.

53. Susan is a Black woman and Fedcap's threat of calling the police and forcibly removing her from the building without her children caused Susan severe emotional distress.

54. At the time of this filing, Susan still has not completed her bachelors' degree as a direct and proximate result of Fedcap's failure to deliver the Services for which Susan was eligible under the ASPIRE program.

## **COUNT I**

55. Plaintiffs repeats and reallege the allegations contained in Paragraphs 1 through 54 and incorporates the same herein by reference.

56. As the Department's independent contractor, Fedcap assumed a duty to deliver the Services to Plaintiffs in accordance with the prescribed specifications, so as not to create a reasonably foreseeable risk of harm to Plaintiffs, who were participants in the ASPIRE-TANF program.

57. Fedcap breached its duty to Plaintiffs, having failed to deliver the Services in accordance with the prescribed specifications, thereby creating a reasonably foreseeable risk of harm to Plaintiffs, under circumstances which Fedcap was or should have been aware.

58. As a direct and proximate result of Fedcap's negligence or the negligence of Fedcap's agent(s), servant(s) or employee(s), Plaintiffs suffered foreseeable damages arising from lost earnings, lost earning capacity, lost earning opportunities, severe emotional distress, and lost enjoyment of life.

WHEREFORE, Plaintiffs pray for judgment against Fedcap for negligence on this Count I, plus interests and costs.

## COUNT II

59. Plaintiff repeats and realleges the assertions contained in paragraphs 1 through 58 as if fully restated herein.

60. In its capacity as the Department's independent contractor, and in furtherance of performing its obligations under the Department Contract, Fedcap contracted directly with Plaintiffs (the "Family Contract Amendment") for delivery of the Services.

61. Fedcap breached the Family Contract Amendment with Plaintiffs, having failed to deliver the Services in accordance with the contract's express and implied terms, thereby creating a reasonably foreseeable risk of harm to Plaintiffs, under circumstances which Fedcap was or should have been aware.

62. As a direct and proximate result of Fedcap's breach of contract, Plaintiffs suffered foreseeable damages arising from lost earnings, lost earning capacity, lost earning opportunities, severe emotional distress, and lost enjoyment of life.

WHEREFORE, Plaintiffs pray for judgment against Fedcap for breach of contract on this Count II, plus interests and costs.

## COUNT III

63. Plaintiff repeats and realleges the assertions contained in paragraphs 1 through 62 as if fully restated herein.

64. Fedcap was Plaintiffs' business partner.

65. As their business partner, Fedcap owed Plaintiffs a fiduciary a duty of loyalty and care, which prohibited Fedcap from knowingly dealing with Plaintiffs as a party having an interest adverse to the partnership.[6]

66. Plaintiffs placed their trust and confidence in Fedcap as the administrator of a program traditionally provided by the government.

---

[6] 31 M.R.S.A. § 1044.

67. There was a great disparity of position and influence between the parties: Fedcap administered the program upon which Plaintiffs depended to feed their children and provide the financial support Plaintiffs required to pursue their college educations.

68. Fedcap breached its fiduciary duty to the Plaintiff by engaging in behavior which it knew or should have known was favorable to Fedcap but adverse to the Plaintiffs, given the nature of the fiduciary relationship, and having failed to exercise reasonable care in delivering the Services to Plaintiffs.

69. Fedcap's breach of fiduciary duty was a substantial factor in causing harm to the Plaintiff.

70. Plaintiffs suffered foreseeable damages arising from lost earnings, lost earning capacity, lost earning opportunities, severe emotional distress, and lost enjoyment of life.

71. As a direct and proximate result of Fedcap's breach of fiduciary duty, Plaintiffs suffered foreseeable damages arising from lost earnings, lost earning capacity, lost earning opportunities, severe emotional distress, and lost enjoyment of life.

WHEREFORE, Plaintiffs pray for judgment against Fedcap for breach of fiduciary duty on this Count III, plus interests and costs.

## COUNT IV

72. Plaintiffs repeat and reallege the assertions contained in paragraphs 1 through 71 as if fully restated herein.

73. Fedcap shared a special relationship with Plaintiffs, as between fiduciaries and as between welfare administrator and welfare recipient.

74. By virtue of that special relationship, Fedcap owed the Plaintiffs a special duty to avoid causing them serious emotional harm in the course of their fiduciary relationship.

75. Fedcap breached its special duty under circumstances, having engaged in discrimination based on race, sex, and/or disability, and by failing to provide services which Plaintiffs needed to support their families, under circumstances that would be highly offensive to any reasonable person, and which were highly offensive to Plaintiffs.

76. As a direct and proximate result of Fedcap's negligence, Plaintiffs suffered foreseeable damages arising from severe emotional distress under circumstances that would be highly offensive to any reasonable person, of the kind and degree which no reasonable person under like circumstances could be expected to endure.

WHEREFORE, Plaintiffs pray for judgment against Fedcap for negligent infliction of emotional distress on this Count IV, plus interests and costs.

## COUNT V

77. Plaintiff repeats and realleges the assertions contained in paragraphs 1 through 76 as if fully restated herein.

78. Fedcap intentionally discriminated against Plaintiffs based on race, sex, and/or disability in ways that affected delivery of the Services and were highly offensive to Plaintiffs.

79. Fedcap disregarded the certain or substantially certain likelihood that Plaintiffs would suffer severe emotional distress as a result of Fedcap's conduct or intended for that result to occur.

80. Fedcap's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable.

81. Plaintiffs suffered severe emotional distress as a direct and proximate result of Fedcap's conduct.

WHEREFORE, Plaintiffs pray for judgment against Fedcap for intentional infliction of emotional distress on this Count V, plus interests and costs.

## COUNT VI

82. Plaintiff repeats and realleges the assertions contained in paragraphs 1 through 81 as if fully restated herein.

83. Fedcap breached the terms of the Department Contract, having failed to deliver the Services to Plaintiffs in accordance with the contract's express and implied terms.

84. As a direct and proximate result of Fedcap's breach of contract with the Department, Plaintiffs suffered foreseeable damages arising from lost earnings, lost earning capacity, lost earning opportunities, severe emotional distress, and lost enjoyment of life.

85. Plaintiffs were intended third-party beneficiaries under the Department Contract.

WHEREFORE, Plaintiffs pray for judgment against Fedcap for damages arising from Fedcap's breach of contract for which Plaintiffs were intended third-party beneficiaries, on this Count VI, plus interests and costs.

## COUNT VII

86. Plaintiff repeats and realleges the assertions contained in paragraphs 1 through 85 as if fully restated herein.

87. Fedcap demonstrated actual malice in discriminating against Plaintiffs based on race, sex, and/or disability, in ways that affected delivery of the Services and were highly offensive to Plaintiffs.

88. Punitive damages should be awarded to punish Fedcap for malicious conduct, and to discourage similar behavior in the future delivery of these desperately needed services.

WHEREFORE, Plaintiffs pray for punitive damages against Fedcap in the amount of $250,000.00 each, plus interest, costs, and such other and further relief that the Court may deem just and equitable, on this Count VII.

DATED at Lewiston, Maine this 28th day of April, 2022.

/s/William C. Herbert, Esq.
William C. Herbert, Esq.
Bar No.: 5181
Attorney for Plaintiffs
HARDY, WOLF & DOWNING, P.A.
186 Lisbon Street
Lewiston, ME 04243-3065

/s/Oriana Farnham, Esq.
Oriana Farnham, Esq.
Bar No.: 6770
Attorney for Plaintiffs
MAINE EQUAL JUSTICE
126 Sewall Street
Augusta, ME 04333

/s/Frank D'Alessandro, Esq.
Frank D'Alessandro, Esq.
Bar No.: 3243
Attorney for Plaintiffs
MAINE EQUAL JUSTICE
126 Sewall Street
Augusta, ME 04333