## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| SARA HALSEY and<br>SUSAN KIRALIS-VERNON,<br><br>                  Plaintiffs,<br><br>v.<br><br>FEDCAP REHABILITATATION<br>SERVICES, INC.,<br><br>                  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Docket No. 1:22-cv-00119-NT<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Plaintiffs Sara Halsey and Susan Kiralis-Vernon allege that Defendant Fedcap

Rehabilitation Services, Inc. ("**Fedcap**"), a nonprofit corporation that contracted with

the State of Maine to administer a federally funded social safety net program, violated

the Plaintiffs' rights under state law. Before me is the Defendant's motion (ECF No.

13) to dismiss the Plaintiffs' First Amended Complaint pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure for failure to state a claim upon which relief may

be granted. For the reasons stated below, the motion to dismiss is **GRANTED**.

## BACKGROUND

### I.    ASPIRE-TANF Program

Congress created the Temporary Assistance for Needy Families ("**TANF**")

program as part of the Personal Responsibility and Work Opportunity Reconciliation

Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105. The TANF program provides federal

grants to participating states to use in programs that "provide[ ] assistance to needy

families with (or expecting) children and provide[ ] parents with job preparation, work, and support services to enable them to leave the program and become self-sufficient."42 U.S.C.A. § 602(a)(1)(A)(i). Maine then established the "ASPIRE-TANF" program, short for the Additional Support for People in Retraining and Employment ("**ASPIRE**") – Temporary Assistance for Needy Families ("**TANF**") program. 22 M.R.S. § 3781-A(1)–(2). The purpose of Maine's ASPIRE-TANF program is "to provide services and support to recipients of [TANF] and to reduce dependence on public assistance" with a "focus on helping people obtain and retain employment that sustains their families." *Id.* § 3781-A(3).

ASPIRE-TANF is administered by Maine's Department of Health and Human Services ("**DHHS**"). *Id.* § 3781-A(2). Maine law tasks DHHS with "provid[ing] case management services to individuals participating in the ASPIRE-TANF program" and "adopt[ing] rules in accordance with the Maine Administrative Procedure Act defining or describing those services." *Id.* § 3782-A(1).[1] To receive TANF benefits, a recipient must enter into a "family contract" with DHHS, which states the responsibilities of the parties, including cooperation in child support enforcement and determination of paternity, the requirements of the ASPIRE-TANF program, and referral to parenting activities and health care services. *Id.* § 3763(1). When a participant enters the ASPIRE-TANF program, their family contract is amended in accordance with 22 M.R.S. § 3788, which outlines the ASPIRE-TANF program

---

[1]      DHHS's ASPIRE-TANF program rules are found in chapter 607 of the 10-144 Code of Maine Rules. *See* 10-144-607 C.M.R. §§ 1–17.

requirements. *Id.* §§ 3763(1), 3788. If an individual fails to comply with the provisions of the family contract amendments, they are subject to sanctions, including termination of their benefits. *Id.* §§ 3763(1)–(1-A).

Although DHHS is tasked with administering Maine's ASPIRE-TANF program, DHHS "may contract with public and private agencies and individuals to deliver employment, training and other services for program participants consistent with the purposes of the [ASPIRE-TANF] program." *Id.* § 3782-A(2). If DHHS chooses to contract with a third party "for the provision of program services," DHHS must:

> monitor each contract agency at least annually to ensure compliance with sections 3786 and 3788 to ensure compliance with the contracts entered into by the parties and to ensure that quality services are provided for program participants. The department shall adopt rules in accordance with the Maine Administrative Procedure Act by which satisfactory performance is measured. The rules must identify the circumstances under which sanctions, including contract suspension, reduction or termination, are applied.

*Id.* § 3782-A(3) (footnote omitted).[2]

In 2016, DHHS contracted with Fedcap to deliver employment, training, and other services to ASPIRE-TANF participants. First Am. Compl. ("**Am. Compl.**") ¶ 13 (ECF No. 10). As the contract agency, Fedcap had the authority to make final determinations as to the content of the Plaintiffs' family contract amendments, to request all support service benefits from DHHS on the Plaintiffs' behalf, and to

---

[2]    Section 3788 outlines the ASPIRE-TANF program requirements. 22 M.R.S. § 3788. Section 3786 reiterates that DHHS shall adopt rules in accordance with the Maine Administrative Procedure Act, and states that "[r]ules governing services provided under this chapter apply equally to all participating [TANF] recipients, whether those services are provided by [DHHS] or any other agency, organization or individual providing TANF program services to participants." *Id.* § 3786.

request a sanction from DHHS to reduce or terminate the Plaintiffs' TANF benefits.

Am. Compl. ¶ 16. Among other things, Fedcap was required to:

- inform program participants about their education, training, study, and work requirements under the ASPIRE program;

- assess participants' education and training needs for attaining sustainable employment, and provide necessary and available support services;

- inform participants about all available education, employment, and training opportunities and support services available under the ASPIRE-TANF program, and provide them with an opportunity to apply for such training opportunities and/or support services;

- inform all participants of the Parents as Scholars program (which provides financial aid for students with dependent children), offer them the opportunity to apply for Parents as Scholars when there are fewer than 2,000 people enrolled in the program, and coordinate and guide them through the Parents as Scholars program;

- notify participants of potential job opportunities for which they may be suited or in which they may be interested and coordinate placement in such jobs as they became available, and provide job search assistance to participants;

- coordinate and authorize support services for participants for child-care, transportation, and other support services directly related to education, training, job search, work component activities, and employment services;

- use commercially reasonable efforts to secure support services from DHHS, including requesting support services in a timely manner and assisting participants with collection of any required documentation needed for DHHS to issue the support;

- assess participants' barriers to participation, and offer those with barriers an opportunity for comprehensive assessment which could result in referral for alternative services, supports and income benefits, and referral to a qualified professional to identify the barriers facing said participants and the participants' strengths and needs;

- review any outside clinical documentation provided by the participant and engage in the interactive process as necessary for evaluating and responding to a request for reasonable accommodation;

- offer reasonable alternative participation requirements to participants with disabilities, and ensure that participants with disabilities are given the right to request and receive a reasonable accommodation in order to receive substantially the same program benefits as persons without disabilities; and

- ensure that program participants are not discriminated against on the basis of race, sex, or disabling condition.

Am. Compl. ¶¶ 19–20, 22–27, 29–34.

## II.   Plaintiffs' Allegations[3]

The Plaintiffs in this case, Sara Halsey and Susan Kiralis-Vernon, are Maine residents who were enrolled in the TANF program. Am. Compl. ¶¶ 3–4, 8. As TANF recipients, they also were required to participate in ASPIRE, and failure to participate could result in sanctions, including the termination or reduction of TANF benefits. Am. Compl. ¶¶ 9, 12.

When Ms. Halsey began participating in the ASPIRE program in 2016, she was in substance use recovery and had a newborn daughter. Am. Compl. ¶¶ 38–39. In 2017, Ms. Halsey's medical providers recommended that she delay seeking employment through ASPIRE because of health barriers related to her disabilities, including the need for stability in her recovery. Am. Compl. ¶ 40. Ms. Halsey informed Fedcap of these medical recommendations and requested an accommodation, but Fedcap failed to engage in the interactive process necessary for evaluating and responding to a request for reasonable accommodation. Am. Compl. ¶¶ 41–42. Instead, Fedcap notified Ms. Halsey that she must find childcare and apply for jobs

---

[3]     The Plaintiffs' well-pleaded facts are accepted as true in reviewing a motion to dismiss. *See Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 34 (1st Cir. 2022).

at Fedcap's office on a daily basis, and that failure to do so within one week would result in sanctions to her TANF benefits. Am. Compl. ¶ 42. Fedcap did not inform Ms. Halsey that she could participate in the ASPIRE program by pursuing education. Am. Compl. ¶ 44.

In 2019, Ms. Halsey enrolled in a full-time graduate certificate program at the University of Maine with the goal of obtaining her bachelor's degree to pursue a career in alcohol and drug counseling for people in substance use recovery. Am. Compl. ¶ 45. When Ms. Halsey told Fedcap that she was enrolled in a certificate program, Fedcap failed to inform her about the Parents as Scholars program or give her an opportunity to apply. Am. Compl. ¶ 46. She also was not informed about or given the opportunity to apply for all other support services for which she was eligible while pursuing education. Am. Compl. ¶ 46. Eventually Fedcap did give Ms. Halsey information about available support services, but the information was inaccurate as Fedcap told her that she was required to work a part-time job in addition to a full-time course load to obtain support services for childcare while she was in school, even though this was not required under ASPIRE. Am. Compl. ¶ 47. When Ms. Halsey received support services for childcare, Fedcap failed to timely submit requests to DHHS so that her childcare costs could be promptly paid. Am. Compl. ¶ 48. Ms. Halsey alleges that she suffered severe mental and emotional distress as a result of Fedcap's actions, and its failure to deliver the nondiscretionary services for which Ms. Halsey was eligible under ASPIRE caused or contributed to her loss of earnings, loss

of earning capacity and opportunity, and lost enjoyment of life. Am. Compl. ¶¶ 43, 47–50.

Ms. Kiralis-Vernon is a Black woman who began participating in the ASPIRE program in 2016, when she had an eight-year-old son and a one-year-old daughter with special health needs. Am. Compl. ¶¶ 51–52, 61. That year she also enrolled at the University of Maine with the goal of obtaining her bachelor's degree to pursue a career in prisoner rehabilitation services. Am. Compl. ¶ 53. When Ms. Kiralis-Vernon told Fedcap that she had enrolled in a bachelor's degree program, Fedcap failed to inform her about the Parents as Scholars program or give her an opportunity to apply. Am. Compl. ¶ 54. Nor was she informed about or given the opportunity to apply for all other support services for which she was eligible while pursuing education. Am. Compl. ¶ 54. Ms. Kiralis-Vernon struggled to afford the books and supplies she needed for college courses, and she often could not access the materials she needed from home. Am. Compl. ¶ 55. When Fedcap informed her about the Parents as Scholars program—one year after she started her bachelor's degree program—Ms. Kiralis-Vernon completed the application for the program, but Fedcap failed to submit her application to DHHS. Am. Compl. ¶¶ 58–59. In addition, when Ms. Kiralis-Vernon received support services for childcare, Fedcap failed to timely submit requests to DHHS so that her childcare costs could be promptly paid, causing Ms. Kiralis-Vernon to fear for her daughter's wellbeing and her own ability to continue her education without reliable childcare. Am. Compl. ¶¶ 56–57.

On one occasion in 2019, a Fedcap employee verbally assaulted her in front of other people. Am. Compl. ¶ 60. As Ms. Kiralis-Vernon was standing in the waiting room of a Fedcap office talking to the receptionist, another Fedcap employee came in and confronted Ms. Kiralis-Vernon in a loud and aggressive tone for missing an appointment. Am. Compl. ¶ 60. Moments later, and without provocation, the Fedcap employee requested "security" and threatened to call the police to have them remove her from the premises. Am. Compl. ¶ 60. Ms. Kiralis-Vernon's children were in the bathroom at Fedcap's office when this occurred, and the Fedcap employee tried to make Susan leave without her children. Am. Compl. ¶ 60. Ms. Kiralis-Vernon alleges that this incident demonstrates that the Fedcap employee acted, at least in part, because of her race, color, or national origin. Am. Compl. ¶ 62. She alleges that she suffered severe emotional distress as a result of Fedcap's actions, and Fedcap's failure to deliver the nondiscretionary services for which Ms. Kiralis-Vernon was eligible under ASPIRE caused or contributed to her loss of earnings, loss of earning capacity and opportunity, and lost enjoyment of life. Am. Compl. ¶¶ 63–64.

The Plaintiffs sued Fedcap on April 28, 2022, Compl. (ECF No. 1), and then filed their First Amended Complaint on July 14, 2022. The First Amended Complaint asserts claims of negligence (Count I), breach of contract (Count II), breach of fiduciary duty (Count III), negligent infliction of emotional distress (Count IV), and intentional infliction of emotional distress (Count V), and requests punitive damages

(Count VI). Am. Compl.[4] After the Plaintiffs filed their First Amended Complaint, Fedcap filed its motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def. Fedcap Rehabilitation Services, Inc.'s Mot. to Dismiss Pls.' First Am. Compl. ("**Def.'s Mot.**") (ECF No. 13).

## LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), 'a complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief,' with 'enough factual detail to make the asserted claim plausible on its face.' " *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022) (quoting *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015)). This is a "make-or-break standard." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plausible" means "more than merely possible." *Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)). In evaluating a motion to dismiss, I take "as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir.

---

[4]      The Plaintiffs' original Complaint also included a claim for breach of contract for which the Plaintiffs were intended third-party beneficiaries, *see* Compl. (ECF No. 1), but that claim was dropped from the First Amended Complaint at issue here, *see* First Am. Compl (ECF No. 10).

2011)). I do not credit "conclusory legal allegations" or "factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Legal Sea Foods*, 36 F.4th at 33 (citations and internal quotation marks omitted).

## DISCUSSION

The Defendant argues that the Plaintiffs' Amended Complaint should be dismissed because: (1) the Plaintiffs' sole remedy is through the DHHS administrative hearing process, followed by judicial review under the Maine Administrative Procedure Act ("**Maine APA**") and Rule 80C of the Maine Rules of Civil Procedure; (2) the Plaintiffs' negligence claim fails because Fedcap is immune from tort liability; (3) the Plaintiffs' breach of contract claim fails to identify the contractual terms allegedly breached; (4) the Plaintiffs' breach of fiduciary duty claim fails because the Plaintiffs do not allege facts establishing such a duty; (5) the Plaintiffs' claim for negligent infliction of emotional distress fails because there is no special relationship between the parties and no allegation that Fedcap discriminated against the Plaintiffs; and (6) the Plaintiffs' claim for intentional infliction of emotional distress fails because the Plaintiffs do not allege facts to support an inference that Fedcap discriminated against them. *See* Def.'s Mot. 10–18.[5] I begin and end with the first issue.

---

[5]     Fedcap also argues that the Plaintiffs failed to allege facts that would entitle them to punitive damages on any of their claims. Def. Fedcap Rehabilitation Services, Inc.'s Mot. to Dismiss Pls.' First Am. Compl. 19.

## I.     Exclusive Remedy – DHHS Administrative Agency Review

According to the Defendant, the Plaintiffs cannot assert common law claims against Fedcap based on Fedcap's administration of the ASPIRE-TANF program because the only remedy for such a grievance is an administrative hearing before DHHS, followed by a court appeal under the Maine APA and Rule 80C. Def.'s Mot. 5–6. In support of its position, the Defendant points to various provisions in Maine's laws and regulations that give ASPIRE-TANF participants a right to a hearing, and states that all of Fedcap's alleged errors fall within the categories of issues for which a fair hearing is provided under the ASPIRE-TANF rules. Def.'s Mot. 6–7.

The Plaintiffs counter that the Maine APA does not apply because Fedcap is not an agency under the Maine APA definition and the Plaintiffs' allegations do not challenge DHHS's actions or policies. Pls.' Obj. to Def.'s Mot. to Dismiss First Am. Compl. ("**Pls.' Opp'n**") 4–5 (ECF No. 16). They further argue that their allegations do not implicate the administrative hearing process because there is no mechanism by which DHHS can review Fedcap's alleged ministerial malfeasance and its failure to disclose program information and timely deliver services, and that, because judicial review of final agency action would not provide an adequate remedy, the Plaintiffs need not exhaust their administrative remedies. Pls.' Opp'n 5–7.

### A.     Fedcap's Status

As an initial matter, it does not matter that Fedcap is not itself a state agency. What matters for purposes of deciding the Defendant's motion to dismiss is whether the Plaintiffs' claims fall within the administrative review scheme administered by DHHS. The statute contemplates that entities other than DHHS might provide

11

services under ASPIRE-TANF. *See* 22 M.R.S. § 3782-A(3) (tasking DHHS with "monitor[ing] each contract agency . . . to ensure that quality services are provided to program participants"). And the rules governing ASPIRE-TANF "apply equally to all participating [TANF] recipients, *whether those services are provided by the department or any other agency, organization or individual providing TANF program services to participants*." *Id.* § 3786 (emphasis added). In other words, the rules—such as the rule requiring provision of a fair hearing, which is described in more detail below—apply to participants like the Plaintiffs whether services are provided by DHHS itself or a contractor like Fedcap. *See id.*; 10-144 C.M.R. ch. 607, § 4(II)(F) ("Participants who disagree with ASPIRE-TANF decisions have the right to an Administrative Hearing, sometimes referred to as a Fair Hearing."). And it follows that the same DHHS administrative procedures apply regardless of whether Fedcap is providing ASPIRE-TANF services or DHHS is providing those services directly. So I turn to the question of what administrative review is available for issues involving ASPIRE-TANF.

> **B.     Review of ASPIRE-TANF Decisions**

The Maine Supreme Judicial Court, sitting as the Law Court, instructs that, "when a legislative body has made provision, by the terms of a statute or an ordinance, for a direct means by which the decision of an administrative body can be reviewed in a manner to afford adequate remedy, such direct avenue is intended to be exclusive." *Fisher v. Dame*, 433 A.2d 366, 372 (Me. 1981). "[R]esort to the courts by alternative routes" is usually not permitted. *Id.* Therefore, when an "agency's decision is reviewable pursuant to . . . M.R. Civ. P. 80C, that process provides the

'exclusive process for judicial review unless it is inadequate.'" *Antler's Inn & Rest., LLC v. Dep't of Pub. Safety*, 2012 ME 143, ¶ 14, 60 A.3d 1248 (quoting *Gorham v. Androscoggin Cnty.*, 2011 ME 63, ¶ 22, 21 A.3d 115). Accordingly, to determine whether the Plaintiffs' claims here are permissible under Maine law, I must ascertain "whether direct review is available and the adequacy of that review." *Colby v. York Cnty. Comm'rs*, 442 A.2d 544, 547 (Me. 1982).

Here, the TANF statute expressly contemplates administrative hearings in certain circumstances. It states that "[a]pplicants and recipients must be provided with timely and adequate notice of any intended action to discontinue, terminate, suspend or reduce assistance or to change the manner of paying cash assistance," and such notice "must inform the applicant of the right to a fair hearing before an impartial hearing officer and also inform the applicant how to request a hearing." 22 M.R.S. § 3762(9)(B). "Hearings must be conducted pursuant to the Maine Administrative Procedure Act." *Id.* The ASPIRE statutory scheme also references participants' rights to a fair hearing. Written notice of a participant's right to request a hearing must be included with each amendment to the family contract, and if a participant requests an amendment to her family contract and is denied, she "must be notified in writing of the reason for the denial and must be given notice of right to a fair hearing." *Id.* § 3788(2).

The DHHS-promulgated rules further provide that "[p]articipants who disagree with ASPIRE-TANF decisions have the right to an Administrative Hearing, sometimes referred to as a Fair Hearing." 10-144 C.M.R. ch. 607, § 4(II)(F); *see* 10-

144 C.M.R. ch. 607, § 1 (defining a "Fair Hearing (also known as an Administrative Hearing)" as "[a] hearing conducted before a Department of Health and Human Services hearings officer in which a participant has an opportunity to dispute a decision made by the Department"). Under the rules:

> A participant who disputes an ASPIRE-TANF decision, including either involving the ASPIRE-TANF Family Contract Amendment (including suspension, reduction, overpayment, or the discontinuation of program services), or the allegation by ASPIRE-TANF that an act of non-compliance or a sanctionable act has been committed, has the right to a fair hearing, provided the request for a fair hearing is made timely.

10-144 C.M.R. ch. 607, § 4(IV)(A). To be timely, the hearing request "must be made within thirty (30) calendar days of the issuance of the notice of action which is disputed." 10-144 C.M.R. ch. 607, § 4(IV)(B).

The question before me is whether the Plaintiffs' allegations are challenges that should have been brought through this administrative hearing process. Ms. Halsey alleges that Fedcap failed to properly evaluate her accommodation request in 2017 and instead notified her that failure to find childcare and apply daily for jobs would result in sanctions to her TANF benefits. This alleged action by Fedcap "fall[s] squarely within the exclusivity principle," *Antler's Inn*, 2012 ME 143, ¶ 15, 60 A.3d 1248, because, regardless of how the Plaintiffs characterize this claim, it is a dispute over Fedcap's determination that Ms. Halsey was committing a sanctionable act that would reduce her benefits. It therefore is within the purview of 22 M.R.S. § 3762(9)(B), and her remedy was direct review of the decision through a fair hearing with DHHS, and—if not satisfied with the outcome there—a review of the agency action in court in accordance with the Maine APA. *See* 5 M.R.S. § 11001 ("[A]ny

14

person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court in the manner provided by this subchapter.").

The remaining Fedcap actions alleged in the First Amended Complaint present closer calls. They boil down to complaints that Fedcap did not timely inform the Plaintiffs about the Parents as Scholars program and related support services and did not timely submit the Plaintiffs' childcare costs to DHHS for payment. Under the ASPIRE-TANF statutory scheme:

> When there are fewer than 2000 enrollees in the Parents as Scholars Program . . ., the department *shall inform* all persons applying for ASPIRE-TANF and all ASPIRE-TANF participants reviewing or requesting to amend their education, training or employment program under ASPIRE-TANF of the Parents as Scholars Program and *shall offer* them the opportunity to apply for the program. The department *shall assist* persons who apply for ASPIRE-TANF and participants seeking to matriculate for postsecondary education, including through appropriate referrals for remedial services or financial aid assistance, and *shall assist* persons with the provision of ASPIRE-TANF services for which they are eligible.

22 M.R.S. § 3788(1-A) (emphasis added); *see also* 22 M.R.S. § 3762(12). Once the Plaintiffs were enrolled in the Parents as Scholars program, Fedcap was obligated to provide them with certain "services and benefits," including childcare costs. *See* 22 M.R.S. §§ 3762(3)(B)(9)–(10), 3790.

Taking the Plaintiffs' allegations as true, Fedcap's failure to inform the Plaintiffs of the Parents as Scholars program would be a violation of this statute if there were fewer than two thousand enrollees when the Plaintiffs requested to amend their participation due to entering postsecondary educational programs. Fedcap's alleged failure to ensure that DHHS paid "necessary" childcare assistance "in a

15

prompt manner," *see* 22 M.R.S. §§ 3762(3)(B)(10), 3782(5), would also seemingly violate ASPIRE-TANF.

The Plaintiffs argue that there is no rule or mechanism for DHHS to review Fedcap's failure to disclose program information or timely deliver services to the Plaintiffs and no process for appealing Fedcap's ministerial malfeasance. Pl.'s Opp'n 6. They contend that DHHS "will only provide an opportunity for hearing" if it is required by constitution, statute, or regulation, and they point out the places in the statutes and rules that expressly reference the right to a fair hearing for certain actions such as when a participant's assistance is discontinued, terminated, suspended, or reduced. Pl.'s Opp'n 5–6.

It is true that the ASPIRE-TANF statutes and rules do not expressly provide for a hearing for grievances like Fedcap's failure to inform participants about programming and failure to timely provide services or payments. But the Legislature tasked DHHS with "administer[ing]" Maine's ASPIRE-TANF program. *See* 22 M.R.S. §§ 3762(3), 3781-A(2). And to accomplish that charge there is a robust regulatory regime in place. Under the DHHS rules, "[p]articipants who disagree with ASPIRE-TANF decisions have the right to an Administrative Hearing." 10-144 C.M.R. ch. 607, § 4(II)(F). "A participant who disputes an ASPIRE-TANF decision, *including* either involving the ASPIRE-TANF Family Contract Amendment (*including* suspension, reduction, overpayment, or the discontinuation of program services), or the allegation by ASPIRE-TANF that an act of non-compliance or a sanctionable act has been committed, has the right to a fair hearing . . . ." 10-144 C.M.R. ch. 607, § 4(IV)

(emphasis added). The use of the word "including" suggests that the list of DHHS actions for which a hearing may be sought is not exhaustive. *See Google LLC v. Oracle Am.*, Inc., 141 S. Ct. 1183, 1197 (2021) (finding that a statutory provision's list was "not exhaustive" because it used "the words 'include' and 'including' "); *P.C. Pfeiffer Co., Inc. v. Ford,* 444 U.S. 69, 77 n.7 (1979) (explaining that the word "including" means the enumerated items are part of a larger group). The right to request a fair hearing is therefore not necessarily limited to the actions that DHHS supplied as examples.

Even if the right to a hearing were so constrained, the Plaintiffs' remaining complaints involve the Plaintiffs' ASPIRE-TANF family contract amendments, which govern the relationship between individual participants and Fedcap. *See* 22 M.R.S. § 3763(1). Under the statute, "[a] participant may request an amendment to the participant's family contract at any time." *Id.* § 3788(2). So, for example, when the Plaintiffs belatedly learned of programs and services for which they qualified, they could have requested amendments to their family contracts to include those. If Fedcap denied the Plaintiffs' requests or failed to make the amendment retroactive to the time when the Plaintiffs first became eligible, then the Plaintiffs could "request a conciliation meeting and a fair hearing." *Id.* § 3788(2).

Further, the DHHS regulations contemplate "proceedings whereby dissatisfied applicants [or] recipients . . . can obtain review of certain actions *or inactions*" of DHHS, suggesting that the right to a hearing is not as cramped as the Plaintiffs contend. 10-144 C.M.R. ch. 1, § I (emphasis added). The regulations also indicate that

the hearing process is intended to "provide a meaningful opportunity for parties to present grievances," *id.*, and the regulations offer other, more informal mechanisms to resolve disputes. 10-144 C.M.R. ch. 331, Me. Public Assistance Manual Chapter VI (noting that "recipients who are dissatisfied with any action will upon request be given the opportunity to discuss their case with the immediate supervisor . . . to determine any available resolution of the problem").[6] Here, there is no allegation that the Plaintiffs attempted to resolve any of their grievances informally or by requesting a hearing. Based on my reading of the statutes and regulations, Ms. Halsey and Ms. Kiralis-Vernon could have sought a hearing before DHHS to address Fedcap's actions—or inactions—when each Plaintiff learned of those alleged failures by Fedcap.

The fair hearing process, as outlined in the ASPIRE-TANF rules, is adequate. DHHS "will offer to assist the participant in contacting free legal counsel and will otherwise assist the participant in preparing for the fair hearing as may be necessary." 10-144 C.M.R. ch. 607, § 4(IV)(C). At the hearing, the participant has the right to be assisted by a representative, to present witnesses and documentary evidence, to examine the case file and all documents used by DHHS, to advance any arguments without undue interference, and to confront and cross-examine adverse witnesses. 10-144 C.M.R. ch. 607, § 4(IV)(D); *see also* 10-144 C.M.R. ch. 331, Me. Public Assistance Manual Chapter VI. Further, although requests for hearings must

---

[6]     This informal procedure would allow DHHS to hear and address claims of abusive and discriminatory treatment, such as those made by Ms. Kiralis-Vernon.

be made within thirty days of the date of the issuance of the notice of the disputed action, DHHS "may waive time limits" and has discretion to extend the thirty-day time limit.[7] 10-144 C.M.R. ch. 331, Me. Public Assistance Manual Chapter VI.

There is also a direct means of obtaining judicial review of DHHS's decisions, through the Maine APA and Rule 80C appeal process. "Under Maine law, a party to an administrative proceeding may appeal any final agency action to a state Superior Court, which will review the decision for abuse of discretion, errors of law, or findings not supported by the evidence." *Kilroy v. Mayhew*, 841 F. Supp. 2d 414, 421 (D. Me. 2012) (citing 5 M.R.S. § 11002 and Me. R. Civ. P. 80C). The reviewing court may also reverse DHHS's decision if the agency's determination was a violation of constitutional or statutory provisions or was affected by bias. 5 M.R.S. § 11007(C). Even the alleged failures of Fedcap to act are accommodated through this procedure. *See* Me. R. Civ. P. 80C ("Proceedings for judicial review of final agency action *or the failure or refusal of an agency to act* shall be commenced by filing a petition as provided by [the Maine APA]." (emphasis added)).

The Rule 80C procedures also allow a plaintiff to add independent claims that would allow for the damages the Plaintiffs seek. *See Fleming v. Comm'r, Dep't of Corr.*, 2002 ME 74, ¶ 9, 795 A.2d 692 ("Rule 80C anticipates that a plaintiff (or petitioner) may add an independent claim for damages, and the rule provides a procedure for handling that independent claim."); *Consumers for Affordable Health*

---

[7]      In circumstances where participants like the Plaintiffs might not have been made aware of the disputed Fedcap action—for example, Fedcap's failure to timely inform them of certain services—DHHS has the authority to waive and extend the hearing request deadline.

*Care v. Superintendent of Ins.*, Nos. Civ.A. AP-00-37, Civ.A. AP-00-42, 2001 WL 1794974, at *3–4 (Me. Super. May 18, 2001) (noting that the asserted "independent claim is, at its essence, an attack on the inaction of the [agency]" and thus the action fell within M.R. Civ. P. 80C).

It makes no difference that the Plaintiffs style their grievances as common law claims. *See Lovell v. One Bancorp*, 614 A.2d 56, 63 (Me. 1992) (holding that assertion of common law claims "amount[ed] to an improper collateral attack" where the claims were really a challenge to the administrative conversion process undertaken by the bureau of banking). All of their claims reduce to a challenge of the way Fedcap conducted the ASPIRE-TANF program with respect to the two Plaintiffs. The vehicle for relief for this type of complaint is the DHHS fair hearing process followed by judicial review under the Maine APA. That is what the Legislature has suggested is the exclusive remedy for alleged mistakes made by DHHS in administering the ASPIRE-TANF program.[8]

---

[8]     Where a statute provides for review of administrative action, relief ordinarily must be sought there "before the courts will act." *Stanton v. Trs. of St. Joseph's Coll.*, 233 A.2d 718, 724 (Me. 1967). Even when it is not imposed by statute, "it is a limitation which the courts impose upon themselves . . . based upon a policy of avoiding interference with the functions of an agency created by the Legislature and a recognition of the advantages of leaving some preliminary determination to agencies which are particularly competent to dispose of them." *Id.*

    It also bears mentioning that, because this is a diversity case applying Maine substantive law, where state law is unclear, I must "ascertain the rule the state court would most likely follow under the circumstances, even if [the federal court's] independent judgment on the question might differ." *Warren v. United Parcel Serv., Inc.*, 518 F.3d 93, 98 (1st Cir. 2008). In addition, "the First Circuit has cautioned litigants who choose to come to federal rather than state court through diversity jurisdiction that they 'cannot expect that new trails will be blazed' and litigants must provide a federal court with a 'well-plotted roadmap showing an avenue of relief that the state's highest court would likely follow.'" *Hearts With Haiti, Inc. v. Kendrick*, No. 2:13–cv–00039–JAW, 2015 WL 3649592, at *3 (D. Me. June 9, 2015) (quoting *Ryan v. Royal Ins. Co. of Am.*, 916 F.2d 731, 744 (1st Cir. 1990)). The Plaintiffs here ask me to blaze such a new trail by bypassing the administrative review process but have given me no accompanying roadmap to follow.

    Even if they had, I would express some hesitation about the Plaintiffs using the federal courts to resolve what they themselves characterize as "ministerial misfeasance," Pls.' Opp'n 6, by Fedcap in

Further, to the extent that the Plaintiffs generally take issue with the way Fedcap, as a contract agency, provided (or failed to provide) services, the ASPIRE-TANF statutory and administrative scheme is still available to address such concerns. Section 3782-A(3) makes DHHS responsible for "monitor[ing] each contract agency . . . to ensure that quality services are provided to program participants," and it is DHHS who is tasked with adopting rules "by which satisfactory performance is measured." 22 M.R.S. § 3782-A(3). The Legislature has thus determined that it is best left to the expertise of the agency, DHHS, to determine the quality of the services offered to participants and the yardstick by which to measure Fedcap's performance.

All five[9] of the counts alleged in the First Amended Complaint assert contract and tort claims under Maine law[10] challenging action or inaction by Fedcap. Because an administrative hearing is available before DHHS and direct review is available under the Maine APA and Rule 80C and because such review is adequate, that is the Plaintiffs' exclusive remedy. Their "[r]esort to the court[ ] by alternative route[ ]" here

---

administering the ASPIRE-TANF program. *See, e.g.*, *Chico Serv. Station, Inc. v. Sol P.R. Ltd.*, 633 F.3d 20, 29 (1st Cir. 2011) (noting that the "fundamental concern" motivating the *Burford* abstention doctrine "is to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution." (quoting *Pub. Serv. Co. of N.H. v. Patch*, 167 F.3d 15, 24 (1st Cir. 1998))).

[9]    The Plaintiffs allege a sixth count for punitive damages, but I do not treat Count VI as an independent claim.

[10]    Although Ms. Halsey asserts that she requested an accommodation for a medical condition and although Ms. Kiralis-Vernon alleges that a Fedcap employee treated her poorly because of her race, color, or national origin, the Plaintiffs do not bring claims under the Rehabilitation Act, 29 U.S.C. § 794, the Americans with Disabilities Act, 42 U.S.C. § 12132, the Civil Rights Act of 1964, 42 U.S.C. § 2000d, or the Maine Human Rights Act, 5 M.R.S. § 4552.

cannot be tolerated, *Colby*, 442 A.2d at 547 (quoting *Fisher*, 433 A.2d at 372), and their claims must be dismissed.

## II. Defendant's Remaining Arguments

Because I find that court review is not available unless and until the Plaintiffs have tried to pursue a remedy before DHHS, I do not address Fedcap's alternative arguments that the Plaintiffs' claims fail for various reasons under Rule 12(b)(6).

### CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendant's motion to dismiss.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 15th day of March, 2023.