UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

SARA HALSEY &              )
SUSAN KIRALIS-VERNON,      )
                          )
            Plaintiffs,    )
                          )        1:22-cv-00119-SDN
v.                         )
                          )
FEDCAP REHABILITATION      )
SERVICES INC.,             )
                          )
            Defendant.     )

## ORDER ON MOTION TO DISMISS

Before the Court is Defendant Fedcap Rehabilitation Services Inc.'s ("Fedcap's") renewed motion to dismiss for failure to state a claim. ECF No. 38. Upon remand from the First Circuit Court of Appeals, this Court was ordered to reconsider the merits of Defendant's motion to dismiss Plaintiff Susan Kiralis-Vernon's claims of verbal assault by a Fedcap employee. *See Halsey v. Fedcap Rehab. Servs., Inc.*, 95 F.4th 1, 22 (1st Cir. 2024).[1] After evaluating the parties' renewed briefings, the Court concludes Ms. Kiralis-Vernon has failed to state a claim upon which relief can be granted and the motion to dismiss must be **GRANTED**.

---

[1] The First Circuit affirmed dismissal of all of Plaintiff Sara Halsey's claims and all of Ms. Kiralis-Vernon's claims except those pertaining to the verbal assault. *See Halsey*, 95 F.4th at 22.

1

## BACKGROUND[2]

### I.    Facts

Ms. Kiralis-Vernon was a participant in a program promulgated by the State of Maine—Additional Support for People in Retraining and Employment–Temporary Assistance for Needy Families ("ASPIRE-TANF" or "the Program"). *See* 22 M.R.S. § 3781-A(2). Maine's Department of Health and Human Services ("DHHS" or "the Department") administers the Program, *see id.* § 3781-A(2), and may contract with a private agency to deliver the ASPIRE-TANF services to eligible participants, *see id.* § 3782-A(2). Underlying this case is Maine's contract with Fedcap, wherein Fedcap may help participants such as Ms. Kiralis-Vernon who seek to enroll in Maine's Parents as Scholars program, which provides support services, including costs for books and childcare, while the parent is enrolled in an accredited degree program. *See id.* § 3790(2). Ms. Kiralis-Vernon alleges Fedcap did not properly inform her of her eligibility for the Parents as Scholars program until she was one year into her bachelor's degree, ECF No. 10 ¶ 58, which created difficulty for her in affording childcare and books, *id.* ¶¶ 56–57. Ms. Kiralis-Vernon brought several claims asserting negligence and breach of contract for Fedcap's failures to comply with applicable regulatory and statutory guidelines surrounding provision of services. *Id.* at 8–10. As discussed further below, the First Circuit affirmed dismissal of those claims—Counts I, II, and III in the First Amended Complaint ("FAC").

As relevant to the motion to dismiss the outstanding claims, Counts IV, V, and VI, Ms. Kiralis-Vernon alleges a Fedcap employee verbally assaulted her in 2019 for missing

---

[2] At the motion to dismiss stage, the Court takes the allegations in the First Amended Complaint, ECF No. 10, as true and draws all reasonable inferences in favor of the Plaintiff. *See Doran v. Mass. Tpk. Auth.*, 348 F.3d 315, 318 (1st Cir. 2003).

an appointment. *Id*. ¶ 60. Ms. Kiralis-Vernon was in the waiting room of the Fedcap office when one of its employees loudly and aggressively berated her for missing an earlier appointment. *Id*. The employee requested security escort her out and threatened to call police; Ms. Kiralis-Vernon protested because her children were in the bathroom at the office. *Id*. She asserts the employee attempted to make her leave without her children. *Id*. Ms. Kiralis-Vernon is a Black woman, and she alleges the employee's actions were predicated on her race, color, or national origin and that she suffered severe emotional distress. *Id*. ¶¶ 62–63. Accordingly, she brings one count of negligent infliction of emotional distress (Count IV), one count of intentional infliction of emotional distress (Count V), and one count for punitive damages (Count VI). *Id*. at 11–12.

## II.    Procedural History

On March 15, 2023, the Court dismissed Plaintiffs' assertions of contract and tort claims challenging Fedcap's actions and inactions under Maine law. ECF No. 20 at 21–22. The Court predicated its dismissal on Plaintiffs' lack of exhaustion of administrative review remedies. *See id*. at 21–22. It also dismissed Ms. Kiralis-Vernon's verbal assault claims on the ground that internal procedures "would allow DHHS to hear and address claims of abusive and discriminatory treatment" in the first instance. *Id*. at 18 n.6. On appeal, the First Circuit disagreed with this conclusion, finding that claims of racial discrimination by an employee are different in kind than the issues of Fedcap's obligations to provide services under the ASPIRE-TANF program. *Halsey*, 95 F.4th at 22. It also noted that "[n]either the statutes nor the regulations grant the Department jurisdiction or authority over such claim, nor does the Department have special expertise." *Id*. at 21. Thus, remand to address the verbal assault claim was warranted. *See id*. at 22. On

December 19, 2025, Fedcap filed a renewed motion to dismiss for failure to state a claim as to the 2019 verbal harassment incident. ECF No. 38.

## ANALYSIS

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." *Nicolaci v. Anapol*, 387 F.3d 21, 24 (1st Cir. 2004) (quoting *TAG/ICIB Servs., Inc. v. Pan Am. Grain Co., Inc.*, 215 F.3d 172, 175 (1st Cir. 2000)). In accordance with this standard, the Court accepts as true Plaintiff's well-pleaded factual averments and draws "all inferences reasonably extractable from the pleaded facts in the manner most congenial to the plaintiff's theory." *Roth v. United States*, 952 F.2d 611, 613 (1st Cir. 1991). Generally, a court may only dismiss a claim pursuant to Rule 12(b)(6) if it "appears to a certainty that the plaintiff would be unable to recover under any set of facts." *State St. Bank & Tr. Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001) (quoting *Roma Constr. Co. v. aRusso*, 96 F.3d 566, 569 (1st Cir. 1996)). The Court evaluates the claims, as the parties do, under Maine law. *See, e.g.*, *Berry v. WorldWide Language Res., Inc.*, 716 F. Supp. 2d 34, 47 (D. Me. 2010) (recognizing that when there is no disagreement between the parties, "there is no need for the Court to make a choice of law determination").

## I.    Negligent Infliction of Emotional Distress (Count IV)

In a negligent infliction of emotional distress ("NIED") claim, a plaintiff must plausibly allege (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm.

*Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18, 25. Maine recognizes the requisite duty in limited circumstances: first, in bystander liability actions, and second, in circumstances in which a special relationship exists between the actor and the person emotionally harmed. *Id*. ¶ 19, 784 A.2d at 25. Ms. Kiralis-Vernon does not assert bystander liability. Thus, the viability of her NIED claim begins and ends with one question: whether the Plaintiff successfully pleaded the existence of a special relationship between herself and Fedcap.

First, Ms. Kiralis-Vernon asserts they share a special relationship as between fiduciaries. ECF No. 10 ¶ 87. Elsewhere in the FAC, she describes Fedcap as a "business partner by virtue of [her] membership in the ASPIRE program" with the "common goal of securing employment for Plaintiff[]." *Id*. ¶¶ 75–76. Defendant disputes this characterization and argues that the FAC alleges no facts establishing either a business partnership or a fiduciary relationship. ECF No. 38 at 7.

> In Maine, a fiduciary relationship exists a matter of law only where the parties occupy disparate positions and there is a reasonable basis for placing trust and confidence in the superior party in the context of the specific events at issue.

*Bryan R. v. Watchtower Bible & Tract Soc. of N.Y., Inc.*, 1999 ME 144, ¶ 20, 738 A.2d 839, 846. Plaintiffs must plead facts supporting such a relationship with specificity. *Id*.

Here, Ms. Kiralis-Vernon's pleadings do not allege facts that plausibly establish a fiduciary or other special relationship with Fedcap. She asserts that she placed "trust and confidence" in Fedcap as the administrator of ASPIRE-TANF funds and that a disparity in position existed because "Fedcap administered the program upon which Plaintiff[] depended to feed [her] children and provide the financial support Plaintiff[] required to pursue [her] college education[]." ECF No. 10 ¶¶ 80–81. But the FAC's own allegations undermine any claim of dependence sufficient to give rise to a fiduciary duty, as Ms.

5

Kiralis-Vernon alleges that she paid for childcare and educational materials out of pocket while pursuing her bachelor's degree and later sought reimbursement from Fedcap. *See id.* ¶¶ 55–58. These allegations indicate she did not rely on Fedcap to undertake or continue her education or to secure childcare in the first instance. In fact, the crux of her complaint is that Fedcap never properly enrolled her in the Parents as Scholars program at all. *See id.* ¶ 64. Even if she had been enrolled, the FAC's facts describe, at most, an arm's-length relationship in which Plaintiff sought reimbursement from a program administrator for expenses already incurred. They do not plausibly allege the type of disparity, dependence, or reposed trust necessary to create a fiduciary or other special relationship under Maine law.

Similarly, the Court finds Ms. Kiralis-Vernon has not adequately alleged the existence of any special relationship, fiduciary or otherwise, between Fedcap as a benefits administrator and Plaintiff as a potential program recipient. The FAC alleges no facts showing that her relationship with Fedcap differed in any material respect from its relationship with other individuals eligible for the Parents as Scholars program. Courts in this District have declined to find a special relationship when nothing "special" or "unique" exists beyond "an ordinary business relationship." *Gavrilovic v. Worldwide Language Res., Inc.*, No. CIV. 05-38, 2005 WL 3369155, at *24 (D. Me. Dec. 8, 2005); *see also Cheung v. Wambolt*, No. CIV. 04-127, 2005 WL 1331195, at *10 (D. Me. June 2, 2005), *report & recommendation adopted*, 2005 WL 1586569 (D. Me. July 5, 2005) (finding "nothing special" about an ordinary landlord-tenant relationship); *Bryan R.*, 1999 ME 144, ¶ 23, 738 A.2d at 847 (finding no "aspects of [plaintiff's] relationship with the church that were distinct from those of its relationships with any other members, adult or child, of the church"). Recognizing the duty Plaintiff proposes would require the

6

Court to extend Maine law by imposing a broad, indeterminate obligation on benefits administrators and their contractors—an expansion that risks "both unlimited liability and liability out of all proportion to culpability." *Cameron v. Pepin*, 610 A.2d 279, 283 (Me. 1992).

The Court also declines to recognize a new category of special relationship in the absence of guidance from Maine courts. *See Douglas v. York Cnty.*, 433 F.3d 143, 149 (1st Cir. 2005) ("It is not our role [as federal courts] to expand Maine law; that is left to the courts of Maine."). The First Circuit has recognized the Maine Law Court's cautious approach "in determining the scope of a defendant's duty to avoid inflicting emotional distress" and declined to "expand this relatively undeveloped doctrine beyond the narrow categories addressed thus far." *Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 131 (1st Cir. 2000). Even construing the FAC in Plaintiff's favor, it does not plausibly allege a special relationship—fiduciary or otherwise—between Ms. Kiralis-Vernon and Fedcap. Accordingly, her NEID claim fails as a matter of law.

The Court **GRANTS** Defendant's motion to dismiss Count IV.

## II. Intentional Infliction of Emotional Distress (Count V)

Ms. Kiralis-Vernon next claims that the Fedcap employee's actions toward her—including their asserted racial animus—were "so extreme and outrageous as to exceed all possible bounds of decency." ECF No. 10 ¶ 96. To establish such a claim of intentional infliction of emotional distress ("IIED"), Plaintiff must plausibly allege four elements:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from [the] conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff[] emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable [person] could be expected to endure it.

*Curtis*, 2001 ME 158, ¶ 10, 784 A.2d at 22–23 (quotation modified). The conduct for an IIED claim must "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 240 (1st Cir. 2013) (quotation modified). "It is for the court to determine whether on the evidence severe emotional distress can be found," and "it is for the jury to determine whether, on the evidence, it has in fact existed." Restatement (2d) of Torts § 46 cmt. j (1965). The Restatement further explains, "[l]iability [under this claim] does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*. cmt. d.

Here, the Fedcap employee allegedly raised their voice and spoke aggressively to Ms. Kiralis-Vernon, called security on her, and attempted to make her leave the office without her children. As troubling and undoubtedly upsetting as these allegations are, they do not rise to the level of "extreme and outrageous" conduct required to sustain an IIED claim. As the Law Court has noted, the Court "maintains a high bar in IIED claims because of the open-ended nature of this claim and the wide range of behavior to which it might plausibly apply." *Deane v. Cent. Me. Power Co.*, 2024 ME 72, ¶ 42, 322 A.3d 1223, 1237 (quotation modified). As such, this tort must encompass "only the most extreme cases." *Id*. Viewed in the light most favorable to the Plaintiff, the employee's actions were certainly undignified and potentially threatening. But in the absence of more specific factual allegations that the behavior was motivated by racial animus or otherwise departed from the bounds of ordinary, if objectionable, human interaction, the FAC does not allege conduct that "may reasonably be regarded as so extreme and outrageous to permit recovery." *Colford v. Chubb Life Ins. Co. of Am.*, 687 A.2d 609, 616 (Me. 1996) (quotation modified). Rather, the FAC alleges the employee was angry with Ms. Kiralis-

Vernon for missing an appointment and did not wish for her to remain in the waiting room. The complaint contains no allegations the employee called Ms. Kiralis-Vernon slurs or other epithets, engaged in a physical altercation, or actually succeeded in separating her from her children. The FAC also does not plausibly connect Ms. Kiralis-Vernon's alleged deprivation of benefits to this verbal altercation.[3] Thus, the Court concludes that Ms. Kiralis-Vernon has not plausibly alleged that the Fedcap employee's behavior was so extreme and outrageous as to cause severe emotional distress.[4]

The Court **GRANTS** Defendant's motion to dismiss Count V.

### III.    Punitive Damages (Count VI)

Ms. Kiralis-Vernon's final claim seeks punitive damages arising from the verbal interaction with the Fedcap employee. "[P]unitive damages are available based upon tortious conduct only if the defendant acted with malice." *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985). Malice can be express, can be demonstrated by conduct that "is so outrageous that malice toward a person injured as a result of that conduct can be implied," or can exist "where the defendant's tortious conduct is motivated by ill will toward the plaintiff." *Id*. As explained above, the alleged conduct, even viewed in the light most favorable to Ms. Kiralis-Vernon, does not reach the level of outrageousness that would support an inference of malice. Nor has she plausibly alleged that the employee was motivated by ill will toward Ms. Kiralis-Vernon, rather than by general displeasure that she had missed a previously scheduled appointment. Without factual allegations

---

[3] Although the FAC alleges there is circumstantial evidence of "disparate treatment of non-Black ASPIRE participants as compared to Black participants like [Ms. Kiralis-Vernon]," the FAC contains no other factual allegations to support this conclusion. ECF No. 10 ¶ 62.

[4] Because the Court finds Plaintiff fails to state a claim, the Court does not address Defendant's alternative argument that Fedcap is immune from liability for its employee's actions. *See* ECF No. 38 at 13–14.

supporting malice in any of its recognized forms, her punitive damages claim cannot stand.

The Court **GRANTS** Defendant's motion to dismiss Count VI.

**CONCLUSION**

For the reasons provided above, the Court **GRANTS** Defendant's renewed motion to dismiss, ECF No. 38, and **DISMISSES** the outstanding claims in the First Amended Complaint (Counts IV, V, and VI), ECF No. 10.

**SO ORDERED.**

Dated this 22nd day of June, 2026.

/s/ Stacey D. Neumann<br>**UNITED STATES DISTRICT JUDGE**